UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


LIBERTY MUTUAL FIRE INSURANCE   :   **CASE NO. 4:08-CV-1678**
COMPANY, et al.,                :
                                :   (Judge Jones)
            Plaintiffs          :
                                :   (Magistrate Judge Smyser)
      v.                        :
                                :
                                :
SHARP ELECTRONICS CORP. et al., :
                                :
            Defendants          :


<u>**REPORT AND RECOMMENDATION**</u>


<u>**Background**</u>.

      A fire caused extensive damage in the Authentic China Wok restaurant in State College, Pennsylvania shortly after the restaurant closed at 10:30 p.m. on May 22, 2006.  The fire also damaged the shopping center in which the restaurant was located and an adjacent Subway restaurant.  The restaurant, the owner of the shopping center, their insurers and the insurer of the Subway restaurant brought actions in the Court of Common Pleas of Centre County, Pennsylvania.  The defendants removed those actions to this court, and the court consolidated the actions. The plaintiffs in this consolidated case are Liberty Mutual

Fire Insurance Company, a/s/o Edens & Avant Financing, L.P., Mutual Benefit Insurance Company, a/s/o Xu Chu Lu and Maryland Casualty Company, a/s/o Farahanis, Inc.  The defendants are Sharp Electronics Corporation, Sharp Corporation, Sharp Electronics Manufacturing Company of America, Inc. and Office Depot, Inc.

The plaintiffs claim that the fire began as a result of an electrical defect in the cash register that was located upon the customer counter of the Authentic China Wok restaurant. The plaintiffs claim that the cash register was manufactured by the Sharp defendants and that it was purchased by Wen Qui Lu, a proprietor of the Authentic China Wok restaurant, at an Office Depot store.

The plaintiffs' claims are strict liability defective product claims, breach of warranty claims and negligence claims.

The defendants filed a motion for summary judgment (Doc. 41), a LR 56.1 statement (Doc. 42) and a supporting brief

(Doc. 46).  The plaintiffs filed a brief in opposition (Doc.
49) and a LR 56.1 statement (Doc. 50).  The defendants filed a
reply brief. (Doc. 52).

     The defendants' summary judgment arguments are that the
plaintiffs do not have evidence sufficient to support
reasonable inferences that the cash register was a Sharp brand
cash register, that it was purchased at an Office Depot store
or that the cause of the fire was an assembly defect of the
cash register.

**Summary Judgment Standard**.

     Summary judgment is appropriate "if the movant shows
that there is no genuine dispute as to any material fact and
the movant is entitled to judgment as a matter of law."
Fed.R.Civ.P. 56(a).  The moving party bears the initial
responsibility of informing the court of the basis for its
motion and identifying those portions of the record which
demonstrate the absence of a genuine dispute of material fact.
*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  With
respect to an issue on which the nonmoving party bears the

burden of proof, the moving party may discharge that burden by

"'showing'-- that is, pointing out to the district court --

that there is an absence of evidence to support the nonmoving

party's case." *Id.* at 325.  Once the moving party has met its

burden, the nonmoving party may not rest upon the mere

allegations or denials of its pleading; rather, the nonmoving

party must show a genuine dispute by "citing to particular

parts of materials in the record, including depositions,

documents, electronically stored information, affidavits or

declarations, stipulations (including those made for purposes

of the motion only), admissions, interrogatory answers, or

other materials" or "showing that the materials cited do not

establish the absence . . . of a genuine dispute." Fed.R.Civ.P.

56(c).

     A material factual dispute is a dispute as to a factual

issue the determination of which will affect the outcome of the

trial under governing law. *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 248 (1986).  "Only disputes over facts that might

affect the outcome of the suit under the governing law will

properly preclude the entry of summary judgment." *Id.*

4

Summary judgment is not appropriate when there is a genuine dispute about a material fact. *Id.* at 248.  A dispute as to an issue of fact is "'genuine' only if a reasonable jury, considering the evidence presented, could find for the non-moving party." *Childers v. Joseph*, 842 F.2d 689, 693-94 (3d Cir. 1988).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). "If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson, supra,* 477 U.S. at 249-50.  In determining whether a genuine issue of material fact exists, the court must consider all evidence in the light most favorable to the non-moving party.  *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988).

At the summary judgment stage, the judge's function is not to weigh the evidence or to determine the truth of the matter but is to determine whether there is a genuine issue for trial. *Anderson, supra,* 477 U.S. at 249.  The proper inquiry of

5

the court in connection with a motion for summary judgment "is the threshold inquiry of determining whether there is the need for a trial - whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

Summary judgment is warranted, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex, supra*, 477 U.S. at 322. "Under such circumstances, 'there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *Anderson v. CONRAIL*, 297 F.3d 242, 247 (3d Cir. 2002)(quoting *Celotex, supra*, 477 U.S. at 323).

6

**Undisputed Facts**.

It is undisputed that there is no documentation that the cash register was a Sharp brand cash register.  There is no documentation that it was purchased at an Office Depot store. It is undisputed that the fire in the Authentic China Wok restaurant was seen by a witness about 44 minutes after the restaurant had closed.  It is undisputed that the cash register was destroyed in the fire so completely that an examination of its component parts and wiring could not be conducted to assist in the investigation of the cause of the fire.

**Discussion**.

**Was the cash register a Sharp cash register?**

The defendants argue that they are entitled to summary judgment in their favor because the plaintiffs can not prove that the cash register at issue was a Sharp product.

There is testimonial evidence that the cash register was a Sharp product.  Wen Qui Lu states that she purchased the cash register and that she thinks that it was a Sharp brand

cash register.  Endi Lu states that he recalls the cash
register to have been a Sharp brand cash register.

It is in genuine dispute whether the cash register was
a Sharp brand cash register, since there is evidence (the Lus'
memories) that could support a jury finding that it was a Sharp
brand cash register.

### Was the cash register purchased at Office Depot?

The defendants also argue that they are entitled to
summary judgment because the plaintiffs can not prove that the
cash register was purchased at an Office Depot store.  Here too
the evidence is the recollection of a witness, Wen Qui Lu.  She
remembers that she bought it by paying cash for it at the
Bellfonte Office Depot store.  But she has no receipt.

The absence of a receipt or other proof of the purchase
detracts from the probative strength of Wen Qui Lu's assertion.
The store's records show only one cash sale of a Sharp cash
register during the relevant period of time and show that to
have been a cash sale to another customer.  Those records

8

further detract from the strength of the inference that Wen Qui Lu purchased the cash register at the Office Depot.

The credibility of witnesses must be determined by the fact finder.  Credibility of witnesses is not properly resolved through a summary judgment motion.  *Country Floors, Inc. v. Partnership Composed of Gepner and Ford,* 930 F.2d 1056, 1061-1062 (3d Cir. 1991).

The court can not hold as a matter of law that the testimony of Wen Qui Lu based on her recollection is not evidence adequate to reasonably support the material inference that the cash register was purchased at an Office Depot store.

### **Was the cash register defective**?

The defendants argue that the plaintiffs do not have evidence to support a reasonable inference that the cash register was defective.  The plaintiffs argue that there is evidence that the fire started at the cash register.  Therefore, they argue, the cash register must have

malfunctioned and therefore it may reasonably be found by the fact finder to have been defectively assembled.

The plaintiffs' expert, Thomas Conlan, describes various ways in which an electrical appliance's faulty wiring can cause a fire.  In his Report he states his opinion as follows:

> It cannot be ruled out that an assembly defect was present to the subject Sharp cash register. An assembly defect can result to pinched wires, improper routing of conductors, conductors installed in a fashion that contacted conductive metal that was at ground potential and over a period in time arc tracking resulted. Normal vibration from the use of the Sharp cash register cannot be ruled out that resulted to damaged electrical insulation by the assembly defect. It cannot be ruled out that the thermal printer malfunctioned that resulted to ignition of the plastic housing or ignition to the roll of thermal register paper. The entire Sharp cash register was consumed by the fire with the exception to the metal cash drawer and the heavy metal power transformer. The power transformer clearly dictates that an internal electrical event occurred. The cause of the internal electrical fault could not be positively identified inside the Sharp cash register because the fire consumed all the internal evidence that started the fire. It must be concluded that the fire was caused by an assembly defect to the Sharp cash register because of all the items in evidence pointed to

the Sharp cash register that was unique to the
fire damage.

(Doc. 49-5 at 14)(errors in original).

In his Supplemental Report, Conlan states his opinion
as follows:

It cannot be ruled out that an assembly defect
was present to the subject Sharp cash register.
An assembly defect can be pinched wires,
improper routing of conductors, conductors
installed in a fashion that contacted
conductive metal that was not at ground
potential and over a period of time arc
tracking resulted.  Normal vibration from the
use of the Sharp cash register cannot be ruled
out resulting in damaged electrical insulation
because of the assembly defect.  The entire
Sharp cash register was consumed by the fire
with the exception of the metal cash drawer and
the heavy metal two (2) pound power
transformer.  The power transformer clearly
dictates that an electrical event occurred.  It
is my opinion that an electrical fault that
resulted from an assembly mistake of pinched
wiring, resulted in a 75 watt arc fault inside
the Sharp cash register that ignited the
plastic housing material.  Because the fire
consumed most of the internal evidence within
the cash register it must be concluded that the
fire was caused by an assembly defect to the
Sharp cash register.  All the items in evidence
pointed to the Sharp cash register that was
unique to the fire damage.  The assembly error
that occurred in the exemplar Sharp cash
register clearly demonstrates that mistakes can
occur.

11

(Doc. 49 at 12, pages 17-18)(errors in original).

The defendants argue that Conlan's opinions are speculative and are inadequate to reasonably support an inference that the cash register was defectively assembled. The defendants' argument that Conlan's opinions are inadequate to reasonably support an inference of a defect is based upon their assertion that to support such an inference there must be "an actual opinion on how the product actually malfunctioned." (Doc. 46, page 17).

The defendants acknowledge, citing *Mracek v. Bryn Mawr Hosp.*, 363 Fed. Appx. 925, 926 (3d Cir. 2010) and *Barnish v. KWI Bldg. Co.,* 602 Pa. 402, 980 A.2d 535, 541 (Pa. 2009), that under Pennsylvania law, when a product has malfunctioned, direct evidence of a product defect may in some situations be unavailable and that in those situations circumstantial evidence establishing a defect may be adequate.  This "malfunction theory" is a theory that where direct evidence of a defect is unavailable and secondary causes of the injuries are ruled out, the fact of the product's malfunction may

12

support a finding of a product defect.  The defendants argue

that this case does not meet the criteria for an application of

the malfunction theory of product defect as described in *Mracek*

and *Barnish*.  We agree.

Upon consideration of all of the evidence in the

summary judgment context, the plaintiffs have insufficient

evidence to reasonably support an inference that a defect in

the design or in the assembly of the cash register was the

cause of the fire.

This is not a defective design case.  There is no

evidence of a defect in the design of any particular model of

Sharp cash registers or of Sharp cash registers generally.

There is no evidence of any tendency or proclivity of Sharp

cash registers to combust.

There is no direct evidence of a defective assembly of

the particular cash register that was on the customer counter

of the Authentic China Wok restaurant.  That cash register was

13

destroyed by fire to the extent that no examination of its components was possible.

The plaintiffs' evidence in support of their theory of a defectively assembled product consists of the apparent location at the cash register of the fire's origin, Conlan's opinion describing ways in which the internal components of an office appliance can be defective in a way that may cause a fire and the destruction by fire of internal cash register components.  The evidence that a fire can originate from the electrical components of an office appliance in combination with the opinion evidence that this restaurant fire began at the location of the cash register and the evidence of heat damage of the cash register's components is the sum and substance of the plaintiffs' evidence of a defectively or negligently assembled product.

Conlan's opinion, it should be noted, is stated as an opinion that it can not be ruled out that an assembly defect was present in the cash register.  He does not state an opinion that some identified assembly defect was present and that it

14

started the fire.  We agree with the defendants' position that
this is not a case in which the manufacturer of a product may
be exposed to liability for harm allegedly caused by a
defective product without an identification of the defect.

In *Barnish*, *supra*, it was established by the
observations of witnesses that the spark detection system
product there had not signaled the presence of a flame.  Thus,
there was evidence that the product had not performed the
function that it was designed to perform.  When there is
evidence that a product has not functioned as it is intended to
function and that harm has resulted, as in *Barnish,* it is under
Pennsylvania law a correct application of Section 402A of the
Restatement to permit a product defect to be proved by evidence
ruling out other possible causes of the harm without requiring
a proof of the specific defect.

The cases involving the use of the malfunction theory
are materially different from this case.  In *Barnish*, the spark
detector failed to detect sparks.  In *Blumer v. Ford Motor Co.,*
2011 Pa.Super. 99 (Pa.Super. 2011), a parking brake

malfunctioned; it failed to stop the car.  In *Wiggins v. Synthes (U.S.A)*, 17 Pa. D. & C. 5th 129 (Pa.Com.Pl. 2010), screws that had been used in surgery broke.  In *Mracek,* a "da Vinci" surgical robot malfunctioned during surgery and displayed "error" messages.  When a product has not performed the function that it is designed and intended to perform and has caused harm when the product is being used for its intended purpose, the malfunction theory provides that more specific proof of the specific defect is not necessary.  In the case now under consideration, there is no evidence that the cash register malfunctioned in the performance of its intended function and that in failing to properly function it caused an injury.  In this case, the plaintiffs want to use the process of elimination of other possible causes of the harm (the fire) in combination with an expert's opinion that there was an unidentified assembly defect to prove both a product assembly defect and the fact of a product malfunction.  This proposed use of the malfunction theory would stretch the applicability of the theory beyond the use permitted under Pennsylvania law.

The plaintiffs' position that Conlan's opinion gives rise to a genuine dispute as to a material factual issue in this case fail to address indispensable considerations.  Conlan does not address the cash register assembly processes and practices.  His theory drops us off with the speculation that there was a product assembly defect.  Strict liability principles, in place to assure safe products and to allocate responsibility to product manufacturers for the losses and injuries caused by unsafe products, are not advanced or satisfied in a case where the product has not failed in its intended use when the nature of the defect is not identified.  Parties not actually responsible may be held liable.  No one necessarily learns to make or try to make a safer product.  Conlan does not address assembly practices.  He does not address the assembly steps that do and do not cause particular dangerous assembly defects.  There is no evidence of Sharp cash register assembly processes and practices.  There is no examination of a significant sampling of Sharp cash registers to permit an inference about assembly consistency or inconsistency or any recurrence of faulty dangerous assembly characteristics in Sharp cash registers.

17

To say that there are product assembly defects is to
say that there were faults or missteps in the assembly process.
To say that there were product assembly defects is to say that
there was negligence.  There is no evidence of negligence in
the assembly process apart from the speculative hypotheses that
the fire started within the cash register and that a fire would
not have started there in the absence of negligence in the
assembly of the cash register components.

The plaintiffs do not have evidence of any particular
product defect.  Conlan's opinion is that it is possible for a
defectively assembled cash register to start a fire and that it
is possible that this cash register was defectively assembled
in one way or another.  It is an unacceptably long leap from
that opinion to a finding that this cash register was
defectively assembled and caused the fire.  Although other
causes, including arson and including a kitchen source, are
arguably ruled out, these other possible causes and other
imaginable causes can not be ruled out with certainty.  It is
as reasonable to speculate that the fire had another cause as
it is to speculate that it was caused by a defective assembly

18

of the cash register.  The probability of the cause of the fire being the eruption into flame of a cash register as the result of a defective assembly of the cash register is so slight under the summary judgment evidence that a jury verdict in favor of the plaintiffs would not withstand a Rule 50 motion.

The plaintiffs' claims of defective assembly, breach of warranty and negligence are all based upon the theory that a fault in the cash register was the cause of the fire.  Conlan's opinion is speculative.  There is not evidence that reasonably supports an inference that an assembly defect in the cash register was the cause of the fire.

**Recommendations**.

It is recommended that the defendants' motion (doc. 41) for summary judgment be granted and that the case be closed.

/s/ *J. Andrew Smyser*
J. Andrew Smyser
Dated:  June 1, 2011.          Magistrate Judge

19